**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| In re: | BKY No.: 09-50779 |
| Dennis E. Hecker, | Chapter 7 |
| Debtor. | |
| Randall L. Seaver, Trustee, | ADV Case No.: 09-_____ |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| Dennis E. Hecker, Midwest Motors, LLC, LKMCD Properties, LLC, Chrysler Financial Services Americas LLC, Toyota Motor Credit Corporation, Inver Grove Motors LLC d/b/a Denny Hecker's Inver Grove Toyota, Jacob Holdings of Highway 110 LLC, and Jacob Holdings of Akron Avenue LLC, | |
| Defendants. | |

Plaintiff Randall L. Seaver, Trustee ("**Plaintiff**"), as and for his Complaint against Dennis E. Hecker ("**Debtor**"), Midwest Motors, LLC ("**MM**"), LKMCD Properties, LLC ("**LKMCD**"), Chrysler Financial Services Americas LLC ("**Chrysler**"), Toyota Motor Credit Corporation ("**Toyota**"), Inver Grove Motors LLC d/b/a Denny Hecker's Inver Grove Toyota ("**IGT**"), Jacob Holdings of Highway 110 LLC ("**JH110**") and Jacob Holdings of Akron Avenue LLC ("**JHA**") (collectively, the "**Defendants**"), states and alleges as follows:

1.  Plaintiff is the duly appointed Chapter 7 Trustee in the above-captioned bankruptcy case.

2.  Defendant Dennis E. Hecker is the debtor herein ("**Debtor**"). Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on June 4, 2009.

Case 09-05045    Doc 1    Filed 09/29/09    Entered 09/29/09 15:21:50    Desc Main
                    Document    Page 2 of 15


3. Where as Twin Cities Motors, LLC ("**TCM**") and IGT executed a purchase agreement and attendant documents on or about April 16, 2009, for the sale of "Denny Hecker's Inver Grove Toyota." The sale included the dealership (IGT), as well as the land used by the dealership (owned by JH110 and JHA).

4. Toyota Motor Sales, U.S.A., Inc. exercised its right of first refusal to replace the buyer, TCW, with a buyer of its own choice, Stephen J. McDaniels ("**McDaniels**").

5. Before the anticipated sale of the dealership could close, Debtor filed for Chapter 7 bankruptcy on June 4, 2009.

6. Pursuant to a settlement including the Trustee and interested parties, it was agreed that the sale could proceed with parties reserving their rights as to a "Personal Services Agreement" ("**PSA**") between the buyer and the Debtor, with the payments to be held by the Trustee, in trust. A closing did occur on or about June 18, 2009 with MM, McDaniels' designee, as the buyer. A copy of the PSA is attached hereto as Exhibit A.

7. The day before this Court's hearing on the settlement, June 17, 2009, state and federal authorities raided Debtor's personal residences and business premises. MM and McDaniels agreed to proceed with their purchase of IGT, and the real estate, and to enter in to the PSA despite the adverse publicity of the raids.

8. Debtor scheduled his interest in the PSA as an executory contract in his Schedule G.

9. The PSA would pay the Debtor the sum of $1 million dollars over the course of four years at the rate of $20,833.33 per month.

10. The Trustee, as of the commencement of this action, has collected four payments pursuant to the settlement and the PSA.

11. MM, on or about July 22, 2009, suspended the purported requirement that the Debtor provide services to it. A copy of said suspension is attached hereto as Exhibit B.

12. After the closing, upon information and belief, LKMCD lent $100,000.00 to Debtor's new company, New Dimension Advisors LLC, and took a security interest in Debtor's rights under the PSA.

13. The Trustee asserts that the PSA is truly a diversion of the purchase price, or some form of diversion of assets, to the Debtor and not truly an agreement for the provision of personal services.

14. Defendants Chrysler and Toyota may claim an interest in the proceeds of the PSA.

15. Debtor lacks an interest in the proceeds of the PSA.

16. The PSA was not an executory contract as of the commencement of this case.

17. This adversary proceeding is a core proceeding under 28 U.S.C. §1157.

18. This Complaint is brought under Bankruptcy Rule 7001, and other applicable federal law, and state law. This Court has jurisdiction over this adversary proceeding, and this adversary proceeding is authorized under 28 U.S.C. §§157 and 1334, Bankruptcy Rule 7001 and Local Rule 1070-1.

**COUNT I - DECLARATORY RELIEF**

19. The Trustee realleges the foregoing Paragraphs of his Adversary Complaint.

20. The Trustee is entitled to declaratory relief pursuant to Minn. Stat. Ch. 555 determining that:

    a. The PSA was not an executory contract at the time of filing;

    b. The PSA is truly a diversion of the purchase price from IGM, JH110 and JHA to the Debtor;

    c. Debtor has no interest in the proceeds of the PSA;

    d. The proceeds of the PSA are subject to the claims of the creditors of IGM, JH110 and JHA;

    e. That MM has an obligation to continue making the payments under the PSA, throughout its term, to the Trustee to be held in trust for those with a proper entitlement to the same; and,

    f. The claimed lien of LKMCD does not attach to the proceeds of the PSA.

## COUNT II - SURCHARGE

21. The Trustee realleges the foregoing paragraphs of his Adversary Complaint.

22. The Trustee is entitled to surcharge the proceeds of the PSA pursuant to 11 U.S.C. §506(c) for his costs and attorneys fees in preserving the same for the benefit of creditors.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter an Order and Judgment against Defendants as follows:

1. For a declaratory relief determining that:

    a. The PSA was not an executory contract at the time of filing;

    b. The PSA is truly a diversion of the purchase price from IGM, JH110 and JHA to the Debtor;

    c.    The Debtor has no interest in the proceeds of the PSA;

    d.    The proceeds of the PSA are subject to the claims of the creditors of IGM, JH110 and JHA;

    e.    That MM has an obligation to continue making the payments under the PSA, throughout its term, to the Trustee to be held in trust for those with proper entitlement to the same; and,

    f.    The claimed lien of LKMCD does not attach to the proceeds of the PSA.

2.    That pursuant to 11 U.S.C. §506(c), the Trustee is entitled to surcharge the proceeds of the PSA in order to recover his costs and attorneys' fees in preserving this asset for the benefit of creditors.

3.    Granting such other relief as the Court deems just and equitable in the premises.

**LEONARD, O'BRIEN**
**SPENCER, GALE & SAYRE LTD.**

Dated: September 29, 2009    By /e/ Matthew R. Burton
    Matthew R. Burton, #210018
    Attorneys for Randall L. Seaver, Trustee
    100 South Fifth Street
    Suite 2500
    Minneapolis, Minnesota 55402
    (612) 332-1030

406029

# **EXHIBIT A**

<div align="right">**EXECUTION VERSION**</div>

## PERSONAL SERVICES AGREEMENT

THIS PERSONAL SERVICES AGREEMENT (the "Agreement") is made and entered into effective upon the Effective Date (as defined below) by and between TWIN CITIES AUTOMOTIVE, LLC, a Delaware limited liability company (the "Company"), and DENNIS E. HECKER, an individual resident of the state of Minnesota ("Hecker").

WHEREAS, Hecker has owned, operated and managed numerous automotive dealerships and other businesses related to the automotive industry for more than 35 years, such that Hecker has developed a recognized understanding and expertise within the automotive industry; and

WHEREAS, the Company has recently underwent a period of significant growth and desires to have access to parties with experience and skills who will assist the Company manage and integrate its growing operations; and

WHEREAS, Hecker possesses the skill set and experience desired by the Company and, therefore, the Company desires to retain Hecker to render services to the Company on the terms and conditions set forth in this Agreement; and

WHEREAS, Hecker desires to be retained by the Company on such terms and conditions.

NOW, THEREFORE, in consideration of the premises and of the mutual covenants and agreements contained herein, the parties agree as follows:

1. **Services and Performance of Duties.** The Company hereby retains Hecker to provide the Services (as defined below) to the Company. In providing the Services, Hecker shall devote such time, energy and skills as are reasonably necessary to discharge Hecker's duties hereunder. Hecker shall report to and be subject to the direction of the President of the Company. Hecker shall conduct the Services at such times as directed by the President of the Company. The Services shall include one or more of the following: assist in the integration and operation of the Company's affiliated automotive dealerships in the state of Minnesota, whether now owned or hereafter acquired (the "Dealerships"); assist in strategic planning for the Dealerships; assist and recommend advertising programs and strategies for the Dealerships; assist with manufacturer relationships for the Dealerships; develop and assist with fleet sales for the Dealerships; develop and assist in used car marketing and wholesale strategies for the Dealerships; assist in planning, development and construction of facilities and improvements for the Dealerships; assist in finding, analyzing and contracting dealerships for acquisition; and to provide such other services as are reasonably requested by the Company, and Hecker hereby agrees to provide the Services.

2. **Term.** The term of this Agreement (the "Term") shall commence upon the Closing of the transactions contemplated by (and as such term is defined in) that certain Asset Purchase Agreement between Twin Cities Toyota, LLC ("Buyer"), Inver Grove Motors LLC, and Hecker dated of even date herewith (the "Asset Purchase Agreement," and such date, the "Effective Date") and shall continue for a period of four (4) years, unless earlier terminated in accordance with this Agreement. Notwithstanding anything in this Agreement to the contrary, if

2328527v8

the Closing does not occur for any reason, this Agreement will not become effective and will be null and void ab initio. The Company may terminate this Agreement by written notice to Hecker:

(a) in the event Hecker breaches any representation, warranty, or covenant made by Hecker hereunder;

(b) in the event Hecker fails to provide the Services as set forth herein and such failure is not remedied within thirty (30) days following written notice from the Company regarding such failure; or

(c) in the event Hecker takes any action that adversely impacts the business, reputation or goodwill of the Company or any of the Company's affiliates in any material manner.

3. **Fees.** As compensation for the Services rendered under this Agreement, the Company shall pay Hecker fees equal to One Million Dollars ($1,000,000) (the "Fees"), payable in forty-eight (48) equal, monthly installments of $20,833.33 commencing on the Effective Date. Fees paid under this Agreement shall not be subject to withholding for federal, state or local income or employment taxes, including withholding for FICA contributions. Hecker shall be solely responsible for any and all federal, state and local income taxes, FICA payments and other required deductions, payments or contributions.

4. **Expense Reimbursement.** The Company shall reimburse Hecker for all reasonable expenses, including reasonable travel expenses, incurred by Hecker on behalf of the Company during the Term of this Agreement, as approved by the Company in advance and upon submission of appropriate documentation of such expenses.

5. **Nature of Relationship.** Hecker is an independent contractor and neither Hecker nor any employee or agent of Hecker shall be deemed to be an employee of the Company for the purposes of any employee benefit programs, income tax withholding, FICA taxes, unemployment benefits, workers compensation benefits, or otherwise. Hecker shall not have any authority to assume or create any obligation, express or implied, on behalf of the Company.

6. **Hecker's Warranties, Representations, and Covenants.** Hecker represents, warrants, and covenants to the Company that (i) Hecker shall comply with and not violate any applicable laws in the performance of the Services under this Agreement; (ii) Hecker shall render the Services in a businesslike and professional manner in accordance with generally accepted standards for the nature of the work performed, and shall act in a manner reasonably calculated to protect the good name and business reputation of the Company; (iii) Hecker shall comply with the covenants set forth in Section 16 of the Asset Purchase Agreement; and (iv) no other party has exclusive rights to Hecker's services to be performed hereunder and Hecker is in no way compromising any rights or trust relationships between any other party and Hecker, or creating a conflict of interest or any possibility thereof, for Hecker or for the Company.

7. **Nondisclosure.** Except as permitted or directed by the Company, or as may be required in the proper discharge of Hecker's duties hereunder, Hecker shall not, during the Term or at any time thereafter, divulge, furnish or make accessible to anyone or use in any way any

2

2328527v8

confidential, trade secret or proprietary information of the Company, including without limitation, whether or not reduced to writing, customer lists, customer files or information, business planning and financial information, contracts, sales and marketing information, business strategy or opportunities for new or developing business (collectively, the "Confidential Information"), which Hecker has prepared, acquired or become acquainted with as a result of his relationship with the Company. Hecker acknowledges that the Confidential Information is the property of the Company, constitutes a unique and valuable asset of the Company and any disclosure or other use thereof, other than for the sole benefit of the Company, would cause irreparable harm to the Company. The foregoing obligations of confidentiality shall not apply to any knowledge or information the entirety of which is now published or subsequently becomes generally publicly known, other than as a direct or indirect result of the breach of this Agreement by Hecker or a breach of a confidentiality obligation owed to the Company by any third party.

8. **Non-Solicitation**. Hecker agrees that, during the Term of this Agreement and for a period of eighteen (18) months following termination of this Agreement for any reason, Hecker will not directly or indirectly solicit, induce or attempt to induce any employee of the Company to terminate his or her employment with the Company.

9. **Return of Property.** Upon the termination of this Agreement, or upon the Company's request, Hecker shall promptly return to the Company all documents, files or other Company property, including all copies thereof, then in Hecker's possession, control or influence, including without limitation all Confidential Information.

10. **Injunctive Relief.** Hecker agrees that it would be difficult to compensate the Company fully for damages for any violation of the provisions of Sections 7 through 13 of this Agreement. Accordingly, Hecker specifically agrees that the Company shall be entitled to temporary and permanent injunctive relief to enforce Sections 7 through 13 of this Agreement and that such relief may be granted without the necessity of proving actual damages. This provision with respect to injunctive relief shall not, however, diminish the right of the Company to claim and recover damages in addition to injunctive relief. Hecker agrees that if the Company is the prevailing party, the Company shall be entitled to recover its costs of litigation and attorney fees incurred in enforcing this Agreement.

11. **Suspension of Payments**. The Company shall have the right to suspend payment of the Fees in the event that a third party asserts (a) any claim, whether in a bankruptcy action, foreclosure action or otherwise, that all or any portion of the Fees are or should have been characterized as consideration for the transactions contemplated by the terms of the Asset Purchase Agreement, or any claims of a similar nature, or (b) any claim that the consideration paid by Buyer under the terms of the Asset Purchase Agreement was insufficient or inadequate or (c) any bankruptcy, preference, fraudulent conveyance or claims of a similar nature related to the transactions contemplated by the Asset Purchase Agreement (collectively, "Claims"). With respect to any Fees so suspended, the Company shall have the right to use or make payment of such Fees directly, or through the Buyer, (y) to any party that is determined by a court of competent jurisdiction, or by any receiver, trustee, or creditor appointed by a court of competent jurisdiction, to be legally entitled to receipt of such Fees or (z) as provided for in Section 12 hereof.

12. **Specific Indemnity and Offsets.**

(a) In the event (i) it is determined by a court of competent jurisdiction, or a trustee, receiver, or creditor appointed by a court of competent jurisdiction, that the consideration paid by Buyer under the terms of the Asset Purchase Agreement was insufficient or inadequate, or (ii) Buyer or any affiliate of Buyer becomes obligated to pay, or agrees to pay, additional consideration or amounts (other than the consideration specified in the Asset Purchase Agreement) whether in connection with a court order, settlement or otherwise, which payment of additional consideration or amounts arises as a result of or related to any Claims, then the Company shall have the right to offset any future Fee payment obligations under this Agreement (including any payments suspended under Section 11) and apply such Fee payment obligations to satisfy in full or in part any liabilities, damages, losses, costs, and expenses incurred by Buyer or any of its affiliates in connection with any such Claims, including without limitation reasonable attorneys fees (in excess of $50,000 incurred by Buyer or any of its affiliates) and any amounts paid in settlement or other resolution of such Claims (collectively, "Losses"). In addition, Hecker shall indemnify, defend and hold harmless, the Company and any of its affiliates for any and all Losses incurred by the Company or any of its affiliates that are not offset by future Fee payment obligations as set forth above; provided, however, that in no event will such indemnification obligation be greater than the amount of the Fees actually paid to Hecker under the terms of this Agreement. The Company and Buyer are affiliates.

(b) The Company and its affiliates will use commercially reasonable efforts to defend against any Claims so long as Hecker is not in default under the terms of this Agreement. For the avoidance of doubt the term commercially reasonable efforts in this context shall include that the Company will not settle any Claims for a period of at least six (6) months from the date a Claim is first asserted, in litigation or otherwise, and notice thereof has been provided to Hecker. Buyer or Company, as applicable, shall present to Hecker any settlements it intends to enter into in advance for his approval, which settlements shall be deemed to be approved by Hecker unless the Company or Buyer has breached its obligations to use commercially reasonable efforts to defend.

13. **General Indemnity.** Hecker shall defend, indemnify and hold the Company harmless from and against any and all liabilities, damages, losses, costs, and expenses (including reasonable attorney fees) which the Company or any of its affiliates may incur or sustain or which may be claimed against the Company or any if its affiliates arising out of or relating to (a) Hecker's performance of the Services or a breach of Hecker's representations, warranties or covenants stated herein, or (b) any act or omission on the part of Hecker or any legal liability on the part of Hecker, in each case related to the performance of his obligations under this Agreement.

14. **General Provisions.**

14.1 **Waivers.** No failure on the part of either party to exercise, and no delay in exercising, any right or remedy hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right or remedy hereunder preclude any other or further exercise thereof or the exercise of any other right or remedy granted hereby or by any related document or by law.

4

2328527v8

14.2  **Governing law.**  This Agreement shall be deemed to be a contract made under the laws of the State of Minnesota and for all purposes it, plus any related or supplemental documents and notices, shall be construed in accordance with and governed by the law of such state without regard to conflict of law provisions.

14.3  **Amendments.**  This Agreement may not be and shall not be deemed or construed to have been modified, amended, rescinded, canceled or waived in whole or in part, except by written instruments signed by the parties hereto.

14.4  **Entire Agreement.**  This Agreement constitutes the entire agreement and understanding between the parties regarding the provision of the Services. All previous discussions, promises, representations and understandings between the parties relative to the subject matter of this Agreement, if any, have been merged into this document.

14.5  **Severability.**  To the extent that any provision of this Agreement shall be determined to be invalid or unenforceable, the validity and enforceability of the remainder of such provision and of this Agreement shall be unaffected. If any particular provision of this Agreement shall be adjudicated to be invalid or unenforceable, the parties specifically authorize the tribunal making such determination to edit the invalid or unenforceable provision to allow this Agreement, and the provisions thereof, to be valid and enforceable to the fullest extent allowed by law or public policy.

14.6  **Notices.**  Any written notice required or permitted hereunder to either party shall be given in writing. Such notice may be delivered by personal delivery, by deposit in the United States Mail, postage prepaid, by any national courier service or by electronically confirmed facsimile transmission with a mailed original.

14.7  **Assignment; Binding Nature.**  Hecker shall not assign or transfer this Agreement or any of his rights or duties hereunder to any other person or entity without the prior written consent of the Company. All covenants, stipulations and promises in this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors, permitted assigns, heirs and legal representatives.

14.8  **Intended Third Party Beneficiaries.**  The parties acknowledge and agree that Buyer and each of the affiliates of Buyer are intended third party beneficiaries of this Agreement.

14.9  **Survival of Terms.**  The obligations contained in Sections 7 through 14 shall survive the termination of this Agreement indefinitely.

[signature page follows]

5

2328527v8

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the date first above written.

**Company:**

By: _____
Name: Peter Hasselquist
Title: Chief Executive Officer

Hecker:

_____/s/_____
Dennis E. Hecker

      IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

Company:

By: _____
Name: Peter Hasselquist
Title: Chief Executive Officer

**Hecker:**

_____
Dennis E. Hecker

2328527v8

6

# **EXHIBIT B**



Law Offices
1400 AT&T Tower
901 Marquette Avenue
Minneapolis, MN 55402-2859
Telephone: (612) 305-1400
Facsimile: (612) 305-1414
www.mcmlaw.com

William J. O'Brien
Attorney at Law
(612) 305-1462
wjo@mcmlaw.com

July 22, 2009

**VIA E-MAIL**
Mr. Bruce J. Parker
Kaplan, Strangis & Kaplan, P.A.
5500 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402

      Re:    Dennis E. Hecker - Personal Services Agreement
             Our File No. 82337-10

Dear Bruce:

    As you are aware, Mr. McDaniels previously wrote to Dennis Hecker on or about July 7, 2009 indicating the specific services Midwest Motors would expect to seek from Mr. Hecker under the Personal Services Agreement which was a part of the overall dealership acquisition. In that letter, Mr. McDaniels also anticipated the need to meet with Mr. Hecker at Mr. McDaniels' office on July 23, 2009 to further discuss the scope of personal services Midwest Motors would require. The July 7, 2009 letter also addressed specific contractual provisions in the Personal Services Agreement which were of concerns to Mr. McDaniels. Recent allegations in the press as well as disclosures made by Mr. Hecker in the bankruptcy court have caused Midwest Motors to suspend the need for Mr. Hecker's services. At this time, Midwest Motors, LLC has no interest in meeting with your client due to his current personal and business issues.

    Midwest Motors is continuing to monitor Mr. Hecker's situation from a distance and has no immediate need for the services to be performed by him under the Personal Services Agreement. Midwest Motors does not believe any such services can be of any value at this time. The only meeting which was scheduled to discuss these issues has been cancelled, and Midwest Motors will provide further information to Mr. Hecker or you regarding any future engagement of Mr. Hecker under the Personal Services Agreement in the near future once it is able to fully analyze Midwest Motors, LLC's rights and obligations under the Personal Services Agreement in light of Mr. Hecker's activities which continue to be brought to light and are the subject of public disclosure.

    Due to numerous business concerns which have been recently raised by business and personal contacts with Midwest Motors and Mr. McDaniels about <u>any</u> involvement either of them may have socially or in a business relationship, I have been asked to communicate on behalf of both of them through your office, and to request the same of you on behalf of Mr. Hecker. Mr. McDaniels is just in no position and has no desire to have any contact with Mr. Hecker. We hope you and your client will understand.

                                      Very truly yours,

                                      MACKALL, CROUNSE & MOORE, PLC

                                      William J. O'Brien

cc:    Stephen J. McDaniels (Via e-mail)
       Matt Burton, Esq. (Via e-mail)
WJO/clh/1093648v1

Licensed to practice law in Minnesota and North Dakota.