**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| In re: | |
| DENNIS E. HECKER | Case No. 09-50779-RJK |
| Debtor. | Chapter 7 |

___

| | |
|---|---|
| RANDALL L. SEAVER, | ADV Pro. No. 09-05045 |
| Plaintiff, | |
| vs. | |
| DENNIS E. HECKER, MIDWEST MOTORS LLC, LKMCD PROPERTIES, LLC, CHRYSLER FINANCIAL SERVICES AMERICAS LLC, TOYOTA MOTOR CREDIT CORPORATION, INVER GROVE MOTORS LLC D/B/A DENNY HECKER'S INVER GROVE TOYOTA, JACOB HOLDINGS OF HIGHWAY 101 LLC, AND JACOB HOLDINGS OF AKRON AVENUE LLC. | ANSWER, CROSS CLAIM AND COUNTERCLAIM OF DENIIS E. HECKER TO AMENDED COMPLAINT |
| Defendants. | |

___

Defendant Dennis E. Hecker ("Hecker") for his Answer, Cross Claim and Counterclaim to the Amended Complaint of Plaintiff Randall L. Seaver ("Trustee") states and alleges as follows:

1. Hecker denies each and every allegation, matter or thing contained in Plaintiff's Complaint unless otherwise specifically admitted or answered herein.

2. Hecker admits the allegations contained in paragraphs 1, 2, 4 and 5.

3. In response to the allegations of paragraph 3, Hecker qualifiedly admits the existence of an asset purchase agreement executed on or about April 16, 2009; however, the

1

buyer was Twin Cities Toyota, LLC. Moreover, said agreement expressly provided for the lease of the real estate with an option to purchase.

4. In response to the allegations contained in paragraph 6, the referenced stipulation (not "settlement") and Personal Services Agreement ("PSA") speak for themselves and that they were executed. Hecker admits that a closing did take place on or about June 18, 2009, but denies the remaining allegations contained in said paragraph. Hecker affirmatively alleges that at no time was there ever a settlement or release of his rights in the PSA, as alleged in said paragraph, and therefore denies the same and puts Plaintiff to its strict burden of proof thereof.

5. With respect to the allegations contained in paragraph 7, Hecker admits that there were executed search warrants on his homes and business on June 17, 2009, and admits that a closing did take place on or about June 18, 2009, and that the referenced documents, including but not limited for the PSA were knowingly and voluntarily entered into by the parties.

6. Hecker admits the allegations contained in paragraphs 8 and 9, and affirmatively alleges that the PSA represents a binding enforceable contract for personal services, which are not part of Hecker's bankruptcy estate, and that said contract speaks for itself.

7. In response to the allegations contained in paragraph 10, upon information and belief, the Trustee received four payments pursuant to the PSA which are to be held in trust pending the resolution of this action.

8. In response to the allegations contained in paragraph 11, the referenced letter dated July 22, 2009 speaks for itself, and is the direct result of the Trustee's wrongful interference with a binding enforceable contractual relationship between the parties involving the providing of valuable personal services by Hecker. By taking the position it did, the Trustee directly and inappropriately caused the buyer to question the enforceability of said binding

contractual agreement, which was negotiated in good faith and for valuable consideration outside of this pending bankruptcy.

9. In response to the allegations contained in paragraph 12, Hecker admits that a valid and binding first security interest in the proceeds of the PSA was provided in exchange for valuable consideration to LKMCD Properties, LLC in the amount of $100,000.

10. In response to the allegations contained in paragraphs 13, 14, 15, and 16, Hecker denies the same and puts Plaintiff to its strict burden of proof thereof. The PSA is not subject to creditors of the bankruptcy estate nor is the Trustee legally entitled to divert said monies to himself.

11. Paragraphs 17 and 18 contain legal conclusions, which Hecker is not required to admit or deny.

12. Hecker restates and realleges all prior paragraphs in response to paragraphs 19 and 21 of the Amended Complaint.

13. In response to the allegations contained in paragraphs 20 and 22, Hecker denies the same, and puts Plaintiff to its strict burden of proof. Hecker further incorporates by reference all of the following affirmative defenses below.

**AFFIRMATIVE DEFENSES**

14. Plaintiff's allegations fail to state a claim upon which relief can be granted.

15. The Personal Services Agreement ("PSA") represents an asset of Hecker <u>NOT</u> belonging to the Bankruptcy Estate as a matter of law, and, therefore, not subject to the claims set forth in Plaintiff's Amended Complaint nor any claims of Chrysler Financial Services Americas, LLC or any other creditor in the pending bankruptcy.

16. The Trustee has no known legal or equitable right to retain the $83,333.32 paid in

trust on behalf of Hecker pursuant to the PSA.

17. The PSA represents a legally binding contract containing clear and unambiguous terms and conditions between the parties subject to said agreement, therefore, as a matter of law, Plaintiff cannot unilaterally attempt to impose its creative interpretation of said terms in an unfair and deliberate attempt to interfere with Hecker's rights hereunder.

18. Plaintiff's claims are barred in part or whole by the Statute of Frauds.

19. The Amended Complaint is barred by the doctrines unclean hands and in *pari delicto*.

20. Hecker is entitled to the right of setoff to the extent he prevails on his Counterclaim against Plaintiff.

## **CROSS CLAIM AGAINST MIDWEST MOTORS, LLC ("Midwest Motors")**

### **Breach of Contract**

1. On or about April 16, 2009, Inver Grove Motors, LLC d/b/a Denny Hecker's Inver Grove Toyota ("IGT") entered into an asset purchase agreement concurrently with the Personal Services Agreement ("PSA") of same date with Twin Cities Toyota, LLC, now known as Twin Cities Motors, LLC ("TCM"). Additional documents were entered into between the parties, which are not relevant to this Cross Claim.

2. The PSA was between Hecker, individually, and Twin Cities Automotive, LLC ("TCA"), TCM's parent company.

3. On or about May 7, 2009, Toyota Motor Sales, U.S.A., Inc. ("TMS"), exercised its right of first refusal with respect to both the asset purchase agreement and PSA, and assigned those rights to Stephen J. McDaniels ("McDaniels").

4. As part of the assignment, McDaniels agreed to assume and perform all

obligations under the asset purchase agreement and PSA as though he were the original party to said agreements.

5. On or about May 29, 2009, McDaniels assigned his rights and obligations under the asset purchase agreement and PSA to Midwest Motors with the express consent of TMS, thereby obligating Midwest Motors as though it were the original party to said agreements and in particular the PSA.

6. On or about June 19, 2009, a closing occurred on the asset purchase agreement, thereby obligating Midwest Motors to perform under the terms of the PSA.

7. The PSA represents a separately negotiated agreement and material concurrent agreement for the sale of IGT. It is not uncommon to have personal services agreements between parties in the sale and transfer of automotive dealerships, which do not represent a disguised portion of the overall purchase price as argued by the Trustee without any evidence or proof of the same.

8. The PSA was knowingly and voluntarily entered into between the original parties to the PSA, and represents a clear and unambiguous agreement enforceable pursuant to its express terms and conditions.

9. At all relevant times hereto Hecker has remained willing, able and ready to perform the PSA.

10. Instead of utilizing Hecker's invaluable experience and available services, on or about July 22, 2009, Midwest Motors repudiated the PSA and attempted to terminate the PSA.

11. Midwest Motor's refusal to continue to make payments to the Trustee as it agreed in the stipulation between the parties pursuant to the PSA, represents a breach of contract of the PSA between Midwest Motor and Hecker for which Hecker has been damaged and continues to

be damaged in an amount in excess of $75,000.00.

## COUNTERCLAIM

Hecker as and for his Counterclaim against Plaintiff, restates and realleges all prior paragraphs herein and further alleges:

### COUNT I – TORTIOUS INTEFERENCE WITH CONTRACTUAL RELATIONSHIPS AND PROSPECTIVE BUSINESS ADVANTAGE

1. As set forth above, the Personal Services Agreement ("PSA") represents a binding contractual agreement between Hecker and Midwest Motors. .

2. At all relevant times hereto, Plaintiff fully knew and understood the terms and conditions of both the PSA and the concurrent asset purchase agreement wherein the parties had fully and extensively negotiated their transaction.

3. All parties to the these concurrent agreements had the advise of legal counsel of their choice, and knowingly and voluntarily entered into said agreements.

4. Plaintiff intentionally interfered with Hecker's contractual relationship with Midwest Motors and related parties, as set forth more specifically in the PSA by interjecting itself into the parties transaction and demanding a separate agreement or stipulation in order to allow the transaction to go forward.

5. As evidenced by the letter of July 22, 2009, Midwest Motors repudiated the PSA as a direct and proximate result of Plaintiff's intentional interference, which directly placed into unnecessary controversy the PSA. In particular, the express terms of the PSA provided Midwest Motors with a reason to suspend payments by the mere commencement of this lawsuit by the Trustee, which the Trustee either knew or should have known by reviewing the express terms of

the PSA.

6. Plaintiff caused Midwest Motors to not continue with agreed upon payments due and owing to Hecker under the PSA, thereby representing a direct interference with Hecker's prospective business relationships with Midwest Motors.

7. The Trustee's actions in bringing this lawsuit were not justified and as a direct and proximate result Hecker has been damaged and continues to be damaged in an amount in excess of $75,000.00.

**WHEREFORE**, Hecker prays for judgment of the Court as follows:

1. Dismissing Plaintiff's claims with prejudice and on the merits;

2. The issuance of an Order declaring the PSA to be an executory contract in favor of Hecker that is not part of the bankruptcy estate and, therefore, not subject to the claims of creditors including, but not limited to Chrysler Financial and others;

3. Ordering Defendant Midwest Motors to pay amounts due and owing under the PSA;

4. Ordering Judgment against Plaintiff for $83,333.32 and in favor of Hecker together with costs and attorneys fees under the PSA pursuant to Defendant's Counterclaim; and

5. Such other and further relief as this Court deems just and equitable.

**SKOLNICK & SHIFF, P.A.**

Dated: January 15, 2010  /e/ LuAnn M. Petricka
**William R. Skolnick #137182**
**LuAnn M. Petricka #18505X**
**527 Marquette Avenue South, #2100**
**Minneapolis, MN 55402**
**(612) 677-7600**
wskolnick@skolnick-shiff.com
petricka@visi.com

ATTORNEYS FOR DEFENDANT
DENNIS E. HECKER

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

Dennis E. Hecker  BKY No. 09-50779 RJK

Debtor.

Randall L. Seaver, Trustee,

        Plaintiff,

                                                        Adversary No. 09-05045

v.

Dennis Hecker, Midwest Motors, LLC,
LKMCD Properties, LLC, Chrysler Financial Services
Americas LLC, Toyota Motor Credit Corporation,
Inver Grove Motors LLC d/b/a Denny Hecker's
Inver Grove Toyota, Jacob Holdings of Highway 110 LLC,
And Jacob Holdings of Akron Avenue LLC

        Defendants.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on January 15, 2010, I caused the following

**ANSWER, CROSSCLAIM AND COUNTERCLAIM OF DENNIS E. HECKER TO AMENDED COMPLAINT**

to be filed electronically with the Clerk of Court through ECF, and that ECF will send an e-notice of the electronic filing to the following listed below:

US Trustee          ustpregion12.mn.ecf@usdoj.gov
Clinton E. Cutler       ccutler@fredlaw.com, mdavis@fredlaw.com
Randall L. Seaver      rlseaver@fullerseaverramette.com, rseaver@ecf.epiqsystems.com
Matthew R. Burton    mburton@losgs.com

I also caused a copy of the **ANSWER, CROSSCLAIM AND COUNTERCLAIM OF DENNIS E. HECKER TO AMENDED COMPLAINT**
to be sent directly via U.S. Mail, postage paid to the following listed below:

Midwest Motors, LLC                          LKMCD Properties, LLC
Attn: Officer/Managing Agent            Attn: Officer/Managing Agent

2873 Highway 61 North           2873 Highway 61 North
Maplewood, MN 55109             Maplewood, MN  55109

Chrysler Financial Services Americas   Inver Grove Motors LLC D/B/A/
Attn:  Officer/Managing Agent          Denny Hecker's Inver Grove Toyota
CIMS 405-23-01                         Attn:  Officer/Managing Agent
27777 Inkster Road                     500 Ford Road
Farmington, MI  48334                  Minneapolis, MN  55426

Jacob Holdings of Highway 110 LLC      Jacob Holdings of Akron Avenue LLC
Attn:  Officer/Managing Agent          Attn:  Officer/Managing Agent
500 Ford Road                          500 Ford Road
Minneapolis, MN  55426                 Minneapolis, MN  55426

                                       Toyota Financial Savings Bank
                                       912 Ft Duquesne Blvd., Ste T
                                       Pittsburgh, PA  15222


Dated: January 15, 2010                **SKOLNICK & SHIFF, P.A.**


                                       /e/ William R. Skolnick
                                       William R. Skolnick #137182
                                       LuAnn M. Petricka #18505X
                                       2100 Rand Tower
                                       527 Marquette Avenue South
                                       Minneapolis, MN 55402
                                       (612) 677-7600
                                       wskolnick@skolnick-shiff.com
                                       **ATTORNEY FOR DENNIS E. HECKER**