# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| In re:<br><br>Dennis E. Hecker<br><br>Debtor, | Bky No. 09-50779<br><br>Chapter 7 |
| Randall L. Seaver, Trustee<br><br>Plaintiff,<br><br>vs.<br><br>Dennis E. Hecker, et. al.,<br><br>Defendants. | **DEFENDANT AND DEBTOR DENNIS HECKER'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND TO ENFORCE SETTLEMENT AGREEMENT**<br><br>Adv. No. 09-5045 |

## INTRODUCTION

Defendant Midwest Motors, LLC ("Midwest Motors") owes Defendant/Debtor Dennis Hecker ("Hecker") a substantial amount of money under a Personal Services Agreement ("Agreement" or "PSA"). Midwest Motors would prefer not to honor its contractual obligations to Hecker. Midwest Motors, along with Plaintiff/Trustee Randall Seaver ("Seaver") and Defendants LKMCD Properties, LLC ("LKMCD"), Chrysler Americas LLC ("Chrysler Financial"), Toyota Motor Credit Corporation ("TMCC") and Toyota Financial Savings Bank ("TFSB") (collectively "Movants") seek to deprive Hecker of his rights under the PSA.[1] Movants ask the Court to disregard the plain language of the Agreement. This Court should deny Movants' Motion.

---

[1] Hecker submits this memorandum of law in opposition to all of the dispositive motions currently pending before this Court.

# STATEMENT OF FACTS

On or about April 16, 2009, Hecker executed a PSA with Twin Cities Automotive, LLC ("TCA"). (Parker Aff. ¶ 2-5.)[2] During the negotiation of the PSA, representatives of TCA stated that TCA wanted the services of Hecker in connection with TCA's expanding ownership of automobile dealerships in the metropolitan Minneapolis/St. Paul area. (Parker Aff. ¶ 4.) At the time that TCA and Hecker executed the PSA, there was already widespread negative publicity in the media regarding Hecker. (Moratzka Aff. Ex. F; McDaniels Dep. Ex. 7.)[3] Nevertheless, TCA believed that it was in its best interest to have Hecker as a consultant. (Parker Aff. at ¶ 3-4; Hasselquist Aff. ¶ 3-5.)

Under the PSA, Hecker agreed to provide services and consultation to TCA in the management and operation of TCA's auto dealerships. (Parker Aff. Ex. A at ¶ 1.) In exchange for Hecker's services, TCA agreed to pay Hecker the sum of $1,000,000.00 in 48 equal monthly installments. (*Id.* at ¶ 3.)

At the same time that TCA and Hecker executed the PSA, TCA also executed a Purchase Agreement with Inver Grove Motors, LLC d/b/a Denny's Hecker's Inver Grove Toyota ("IGM"). (*Id.*) Under the Purchase Agreement, TCA purchased a Toyota dealership (the "Dealership") in Inver Grove, Minnesota from IGM. At the time of the Purchase Agreement, Hecker was the owner of IGM and the operator of the Dealership. (*Id.*) Peter Hasselquist, President of TCA who executed the PSA on behalf of TCA, has

---

[2] The Declaration of Bruce Parker and the Affidavit of Peter Hasselquist were previously filed with this Court in the main bankruptcy matter, Case No. 09-70779-RJK, on June 11, 2010, DOCKET NO. 555.

[3] See DOCKET NO. 76.

testified via affidavit that TCA paid fair market value for the Dealership. (Hasselquist Aff. at ¶ 3-4.) Hasselquist has also testified that the PSA was a legitimate contract for Hecker's services and not a disguised purchase price. (*Id.*)

Because TCA was aware at the time that it executed the PSA that third parties might have potential claims against Hecker, Section 12(b) of the PSA provides as follows:

> The Company and its affiliates will use commercially reasonable efforts to defend against any Claims so long as Hecker is not in default under the terms of the Agreement. For the avoidance of doubt the term commercially reasonable efforts in this context shall include that the Company will not settle any Claims for a period of at least six (6) months from the date a Claim is first asserted, in litigation or otherwise, and notice thereof has been provided to Hecker. Buyer or Company, as applicable, shall present to Hecker any settlements it intends to enter into in advance for his approval, which settlements shall be deemed to be approved by Hecker unless the Company or Buyer has breached its obligations to use commercially reasonable efforts to defend.

(Moratzka Aff. Ex. B.)

Section 2(c) of the PSA also provides that the Company (TCA and its successors) may terminate the Agreement "in the event that Hecker takes any action that adversely impacts the business, reputation, or goodwill of the Company or any of the Company's affiliates in any material manner." (*Id.*)

Toyota Motor Sales, USA ("TMS") had a right of first refusal with regard to the Purchase Agreement. TMS exercised that right and assigned its interest under the Purchase Agreement to Stephen J. McDaniels, who in turn assigned his right to Midwest Motors, a company owned and operated by McDaniels. Midwest Motors assumed all obligations to Hecker under the PSA.

3

On June 18, 2009, Midwest Motors and Hecker executed a stipulation that reaffirmed the PSA, with this Court's approval. Between the execution of the PSA and the time that Midwest Motors reaffirmed the PSA, the media had published more negative stories regarding Hecker. (McDaniels Dep. Ex. 7.)

On September 29, 2009, the Trustee brought this adversary proceeding alleging that the PSA is a disguised purchase price. Several adverse creditors have joined in the Trustee's claim. McDaniels (the owner of Midwest Motors) testified in his deposition that the PSA is not a disguised purchase price and that he knows of no basis for the allegation that the PSA is a disguised purchase price. (Neve Dec. at Ex. A; McDaniels Dep. at 71-72, 90-91, 99.) McDaniels was unaware of any evidence that the Trustee or the adverse creditors had to support their claim. (*Id.*) Indeed, the record in this case indicates that the Trustee and the adverse creditors have no such evidence. Chrysler has even stipulated that it has no discoverable evidence and will not submit any evidence at the trial in this matter. (Neve Dec. Ex. B & C.) Likewise, the Trustee, TFSB and TMCC have produced no evidence that the PSA was a disguised purchase price. (Neve Dec. ¶ 4.)

Although McDaniels acknowledges that the Trustee's and adverse creditors' claims are weak and meritless, Midwest Motors has done little to defend against those claims. At most, Midwest Motors has simply answered the Amended Complaint and sent out written discovery requests in this matter. (Neve Dec. ¶ 3.)[4]

---

[4] The Declaration of John R. Neve was previously filed with this Court in the main bankruptcy matter, Case No. 09-70779-RJK, on June 11, 2010, DOCKET NO. 555.

It is undisputed that since the closing on June 19, 2009, Hecker has been ready, willing and able to perform services under the PSA. (Second Neve Dec. Ex. A.) Midwest Motors failed to utilize Mr. Hecker's services from the date of closing and after.

## ISSUES ON SUMMARY JUDGMENT

1. **Does Simply Waiting For Six Months After the Initiation of a Meritless Lawsuit Constitute Commercially Reasonable Efforts to Defend that Lawsuit as a Matter of Law Such That Midwest Motors May Force Hecker to Accept a "Settlement Agreement" that Benefits All Parties Except Hecker?**

   **ANSWER: No**

2. **Does the Negative Media Publicity Surrounding Hecker Constitute a Breach of the PSA by Hecker When the Negative Publicity Predates the Execution of the PSA, is Unrelated to Midwest Motors, and is the Result of Actions of the Media, Over Whom Hecker Has No Control?**

   **ANSWER: No.**

3. **Is there a Genuine Issue of Material Fact as to Hecker's Claim Against the Trustee for Tortious Interference with the PSA?**

   **ANSWER: Yes**

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). At the summary judgment stage "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (U.S. 1986). The facts "must be viewed in the light most favorable to the party opposing the motion." *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 158-59 (1970).

## II. NEGATIVE MEDIA PUBLICITY ALONE DOES NOT CONSTITUTE A DEFAULT UNDER THE AGREEMENT

Section 2(c) of the PSA applies only to actions taken by Hecker *after the execution of the PSA* that have a material adverse impact on TCA or its successors. The preexisting negative media publicity surrounding Hecker does not constitute a default under Section 2(c) of the PSA.

### A. The Publication of Negative Articles Regarding Hecker is an Action of the Media, Not an Action of Hecker

Section 2(c) of the PSA provides that the Company (TCA and its successors) may terminate the Agreement "in the event that **Hecker takes** any action that adversely impacts the business, reputation, or goodwill of the Company or any of the Company's affiliates in any material manner." (Moratzka Aff. Ex. B.) (Emphasis added.)

Under the plain language of Section 2(c), the media's publication of negative articles does not constitute a default by Hecker. The media is an independent third party, over whom Hecker has no control. Indeed, Hecker would obviously prefer that the media cease portraying him in a negative light. The media's publication of negative material regarding Hecker is not an action of Hecker and may not constitute a default under Section 2(c).

Moreover, the Court should not take every sensationalist media story as true for the purposes of this Motion for Summary Judgment. To the extent that Movants' seek to demonstrate that Hecker really did take all of the actions that the media alleges, Movants must produce affirmative evidence in the form of sworn testimony to support that claim. Movants have failed to do so.

### B. The Media Stories Relate to Alleged Acts of Hecker that Occurred Prior to the Execution of the PSA

Even if the Court were to take the media stories as true for the purposes of this Motion (which the Court should not do), the acts alleged in the media stories do not constitute a breach of the PSA. The acts alleged in the media stories cannot possibly constitute a breach of the PSA because those acts occurred before the execution of the PSA.

For example, an article on June 22, 2009, discusses allegations that Hecker failed to pay taxes in 2003 and 2005. (Moratzka Aff. Exs. G, H.) An article on June 23, 2009, discusses allegations that Hecker diverted money from his car leasing companies to his other companies between April of 2006 and August of 2008. (*Id.*) An article on July 30, 2009, discusses a raid by the FBI and the IRS seeking evidence of "alleged fraud going back to 2002." (*Id.*) An article on September 14, 2009, discusses allegations that Hecker made false statements to US Bank related to a loan that occurred in October 2008. (*Id.*) An article on July 9, 2009, relates to Chrysler's allegations that Hecker made false statements to Chrysler in connection with a November 2007 loan. (*Id.*) An article on August 12, 2009, discusses Hecker's ex-wife's allegations that Hecker failed to inform her of certain information when they executed a post-nuptial agreement in the fall of 2008. (*Id.*) In short, all of the media stories relate to alleged misconduct that occurred prior to the execution of the PSA on April 16, 2009 and the closing on June 19, 2009.

Conduct that occurs prior to the formation of a contract cannot constitute a breach of that contract. *Colonial Sav., FA v. Gulino,* 2010 WL 1996608 (D. Ariz., May 19, 2010) ("It is a settled principle that conduct occurring prior to the formation of a contract

7

cannot be the basis for a breach of contract claim.") (*quoting Swantrom v. Boeing Co.,* 2005 WL 1719896 (W.D. Wash. July 25, 2005); *Spencer v. DHI Mortgage Co., Ltd.,* 642 F.Supp.2d 1153, 1165 (E.D. Cal. 2009) ("DHI is correct that it could not have breached a contractual obligation prior to contract formation"); *Budgetel Inns, Inc. v. Micros Sys., Inc.,* 8 F.Supp.2d 1137, 1147 (E.D. Wis., 1998) ("Typically, causes of action that arise before entering into a contract constitute independent torts because no duty has yet been created under the contract."); *E Williamson Roofing and Sheet Metal Co., Inc. v. Town of Parish,* 139 A.2d 97, 100-01 (N.Y. A.D. 4 Dept., 1988) (holding that omissions that occurred prior to the formation of a contract cannot be the basis of contractual liability).

Furthermore, the plain language of Section 2(c) of the PSA applies only to acts taken by Hecker after the execution of the PSA. Section 2(c) of the PSA provides that the Company (TCA and its successors) may terminate the Agreement "in the event that Hecker **takes** any action that adversely impacts the business, reputation, or goodwill of the Company or any of the Company's affiliates in any material manner." (Moratzka Aff. Ex. B.) (Emphasis added.) Movants ask this Court to rewrite Section 2(c) to read: "in the event that Hecker **has taken** any action that adversely impacts …" There is simply no basis in the language of the contract for applying Section 2(c) to actions taken by Hecker **before** the execution of the PSA.

In no way did the PSA guarantee that Hecker's reputation would remain pure and untarnished by negative press. Indeed, at the time of the execution of the PSA, the negative press was already circulating widely. (McDaniels Dep. Ex. 7.) In the weeks prior to the execution of the PSA, the Star Tribune published stories regarding Hecker's

8

financial woes, the closing of his dealerships, his debts, and his driving under the influence and careless driving charges. (*Id.*) Prior to the time that Midwest Motors reaffirmed the PSA, the Star Tribune published stories regarding the massive judgments that were being entered against Hecker (including Chrysler's $476.9 million judgment), creditors' efforts to collect from Hecker, the revocation of his mortgage license, and his bankruptcy filing. (*Id.*) On June 18, 2009, the day before Midwest Motors reaffirmed the PSA, the Star Tribune published a video entitled "The Denny Hecker Criminal Probe" and an article entitled "Authorities raid Hecker offices, homes." (*Id.*) TCA was well aware of the negative press when it executed the PSA and Midwest Motors was well aware of the negative press when it reaffirmed the PSA.

## C. The Negative Publicity Regarding Hecker is Unrelated to TCA and Unrelated to Midwest Motors

The negative media portrayal of Hecker is unrelated to TCA and unrelated to Midwest Motors. Therefore, the negative media portrayal of Hecker does not "adversely [impact] the business, reputation, or goodwill of [Midwest Motors] or any of [Midwest Motors] affiliates in any material manner."

Midwest Motors' predecessor TCA believed that it was beneficial to TCA's business to have Hecker as a consultant notwithstanding the negative media publicity surrounding Hecker. (Parker Aff. at ¶ 3-4; Hasselquist Aff. ¶ 3-5; McDaniels Dep. Ex. 7.) At a bare minimum, the issue of whether or not the negative press surrounding Hecker had a material adverse impact on Midwest Motors is an issue of fact precluding summary judgment.

## III. MIDWEST MOTORS HAS FAILED TO USE COMMERCIALLY REASONABLE EFFORTS TO DEFEND AGAINST THE DUBIOUS CLAIMS OF THE TRUSTEE AND THE ADVERSE CREDITORS

Section 12(b) of the PSA provides that "[t]he Company and its affiliates will use commercially reasonable efforts to defend against any Claims." (Moratzka Aff. Ex. B.) Section 12(b) further provides that "commercially reasonable efforts … shall **include** that the Company will not settle any Claims for a period of at least six (6) months." (*Id.*) (Emphasis added.) Nowhere does the PSA state that passively waiting for a period of six months is, in and of itself, sufficient to constitute commercially reasonable efforts to defend. Finally, Section 12(b) provides that Hecker will not be deemed to have accepted any settlement if "[Midwest Motors] has breached its obligations to use commercially reasonable efforts to defend." (*Id.*)

In this case, Midwest Motors has utterly failed to defend against claims that are completely meritless. The owner of Midwest Motors has acknowledged that the claims of the Trustee and the adverse creditors are baseless and weak. (Neve Dec. at Ex. A; McDaniels Dep. at 71-72, 90-91, 99.) The Trustee and the adverse creditors have failed to present any evidence that the PSA is a disguised purchase price. In fact, the record reflects quite the opposite. (Hasselquist Aff. ¶ 3-5; Parker Aff. ¶ 3-4.)

The only argument that the Trustee has advanced in support of his claim that the PSA is a disguised purchase price is the fact that Section 14.7 of the PSA provides that the Agreement "shall be binding upon and inure to the benefit of the parties hereto and their respective successors, permitted assigns, heirs, and legal representatives." (Moratzka Aff. Ex. B.) As this Court is well aware, many, if not most, commercial

contracts include similar standard boilerplate language. Movants' reliance on *In re Bergh,* 141 B.R. 409, 416-17 (Bkrtcy D. Minn. 1992) is misplaced. In *Bergh,* this Court held that an Agreement was not an employment contract because the contract explicitly provided that it would survive the death of the supposed "consultant." *Id.* Unlike the Agreement in *Bergh,* the PSA would not survive the death of Hecker. In fact, Section 2(b) of the PSA explicitly provides that Midwest Motors may terminate the PSA "in the event that Hecker fails to provide the services as set forth herein." (Moratzka Aff. Ex. B.) As stated above, there is no evidence before this Court that Hecker has failed to provide services requested of him under the PSA. (Second Neve Dec. Ex. A.)

The claims of the Trustee and the adverse creditors that the PSA was a disguised purchase price are without a basis in law or fact. Indeed, the record compels summary judgment in favor of Hecker on the claims of the Trustee and the adverse creditors and Hecker so moves. *Jordan Underwriter's Serv., Inc. v. Interpid Ins. Co.,* 46 F.3d 1142 (9th Cir. 1995) (a court may order summary judgment against the moving party so long as the issues have been fully briefed by the parties); *see also*, proposed Fed. R. Civ. P. 56(f)(1) ("**Judgment Independent of the Motion**. After giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant;").

In spite of the weakness of the Trustee's claims, Midwest Motors has done little to defend against those claims. At most, Midwest Motors has simply answered the Amended Complaint and sent out written discovery requests in this matter. (Neve Dec. ¶ 3.) Midwest Motors has failed to use commercially reasonable efforts to defend against the claim that the PSA is a disguised purchase price. Therefore, Midwest Motors has no

right to force Hecker to accept a "settlement agreement" that is favorable to everyone except Hecker.

Reasonableness is generally an issue of fact that should be decided at trial rather than on summary judgment. *Berg v. Xerxes-Southdale Office Bldg. Co.,* 290 N.W.2d 612, 616 (Minn. 1980) (reasonableness was an issue of fact and trial court erred by granting judgment as a matter of law on the issue); *Brenner v. Nordby,* 306 N.W.2d 126, 127 (Minn. 1981) (issue of reasonableness was "clearly a fact question," and precluded summary judgment); *Norwest Bank Minn., N.A. v. Midwestern Mach. Co.,* 481 N.W.2d 875, 880 (issue of reasonableness "is a fact question for the jury and not generally amenable to summary judgment."). Therefore, at a minimum, the issue of whether Midwest Motors has engaged in reasonable efforts to defend against the claims is a fact issue that precludes summary judgment and enforcement of the settlement agreement against Hecker.[5]

### IV. THERE IS A GENUINE ISSUE OF MATERIAL FACT AS TO HECKER'S CLAIM AGAINST THE TRUSTEE FOR TORTIOUS INTERFERENCE

The elements of tortious interference with contract are: (1) there is a contract, (2) the defendant knew about the contract, (3) the defendant intentionally procured a breach of the contract without justification, and (4) the plaintiff suffered injuries as a direct result of the breach. *Dyrdal v. Golden Nuggets, Inc.,* 672 N.W.2d 578, 587-88 (Minn. Ct. App. 2003).

---

[5] Hecker has already filed in the main bankruptcy matter an opposition to the enforcement of the settlement agreement against him. *See* DOCKET NO. 555, Case No. 09-70779-RJK. Hecker refers the Court to that opposition and supporting pleadings and incorporates all arguments therein as if asserted in this adversary proceeding.

In this case, there is no dispute that the PSA constitutes a contract and the Trustee knew about the PSA. Based on the record, a reasonable fact finder could infer that the Trustee brought a claim that the PSA was a disguised purchase price knowing that claim to be baseless. A reasonable fact-finder could also infer that the Trustee induced Midwest Motors to stop paying Hecker and to passively wait for a cram-down "settlement agreement" without actively defending the case. The Trustee then cooperated with Midwest Motors and the adverse creditors in an attempt to force a "settlement agreement" that was favorable to everyone except Hecker.

Viewed in the light most favorable to Hecker, the evidence shows that the Trustee induced Midwest Motors to breach its obligations to Hecker under the PSA. The Trustee induced Midwest Motors to breach its obligation to pay Hecker, and also induced Midwest Motors to breach its obligation to exercise reasonable efforts to defend against the Trustee's and adverse creditors' claims. The Trustee's breach was without justification, because the Trustee's claim is baseless. As a result of the Trustee's actions, Hecker has suffered damages in the form of nonpayment. Hecker has also been damaged because he has been forced to defend this adversary proceeding alone, without the benefit of a commercially reasonable defense from Midwest Motors. Hecker has a viable claim for tortious interference sufficient to withstand summary judgment.

## CONCLUSION

Hecker has certain rights under the law and under the PSA. Hecker has these rights regardless of the current negative media publicity. Movants have no right to benefit themselves by depriving Hecker of his contractual rights. The Court should DENY Movants' Motions for Summary Judgment and to Enforce the Settlement Agreement.

NEVE LAW, PLLC

Dated: July 9, 2010

    */e/ John R. Neve*
John R. Neve (#278300)
8500 Normandale Lake Boulevard
Suite 1080
Minneapolis, MN 55437
(952) 929-3232

ATTORNEY FOR DEBTOR AND
DEFENDANT DENNIS E. HECKER

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Bky No. 09-50779 |
| Dennis E. Hecker, | Chapter 7 |
| Debtor. | |

| | |
|---|---|
| Randall L. Seaver, Trustee | |
| Plaintiff, | **SECOND DECLARATION OF JOHN R. NEVE** |
| vs. | Adv. No. 09-5045 |
| Dennis E. Hecker, et al., | |
| Defendants. | |

I, John R. Neve, state as follows:

1. I am an attorney representing the Debtor/Defendant Dennis E. Hecker ("Hecker") in the above-entitled adversary proceeding. I provide this Declaration in support of Hecker's Memorandum of Law in Opposition to Summary Judgment and to Enforce Settlement Agreement.

2. Attached hereto as Exhibit A is a true and correct copy of correspondence from Bruce J. Parker to William J. O'Brien dated July 27, 2010.

The undersigned declares under penalty of perjury under the laws of the United States and the State of Minnesota that the foregoing facts stated in this Declaration are, to the best of my knowledge and belief, true and correct.

Executed on this 9th day of July 2010.

_____
John R. Neve

LAW OFFICES
# KAPLAN, STRANGIS AND KAPLAN, P. A.

90 SOUTH SEVENTH STREET • SUITE 5500

MINNEAPOLIS, MINNESOTA 55402-4126

SHELDON KAPLAN
SAMUEL L. KAPLAN
RALPH STRANGIS
HARVEY F. KAPLAN
ANDRIS A. BALTINS
DAVID KARAN
BRUCE J. PARKER
CATHERINE A. BARTLETT
ROBERT T. YORK
JAMES C. MELVILLE
MARY S. GIESLER
KATE SHERBURNE

612/375-1138

FACSIMILE 612/375-1143
E-MAIL BJP@kskpa.com

DIRECT DIAL 612/904-5607
DIRECT FAX 612/904-5697

OF COUNSEL
PHILLIPS & POTACH, P.A.

OF COUNSEL
JOHN H. MATHESON

July 27, 2009

William J. O'Brien
MacKall Crounse & Moore, PLC
1400 AT&T Tower
901 Marquette Avenue
Minneapolis, MN 55402-2859

Dear Bill:

    I am in receipt of your letter dated July 22, 2009 cancelling the July 23 meeting between our clients, the purpose of which was to discuss the specific services that Dennis E. Hecker would be providing to your client under the Personal Services Agreement.

    We understand your client is not currently requesting services from Mr. Hecker, and hence there was no need for a meeting. Mr. Hecker, however, stands ready, willing and able to perform the services that your client has contracted him to perform under the Personal Services Agreement. In addition, your client's decision not to use Mr. Hecker's services at this time does not relieve your client of its obligations to under the Personal Services Agreement. Please contact me with any questions or concerns.

Sincerely,

Bruce J. Parker

BJP/nf
cc: Dennis E. Hecker
      Clinton E. Cutler
      Matt Burton

# Exhibit A

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

___

| | |
|---|---|
| In re: Dennis E. Hecker, | Bky No. 09-50779 |
|      Debtor.    Chapter 7 | |

___

| | |
|---|---|
| Randall L. Seaver, Trustee, | |
|      Plaintiff, | Adv. No. 09-5045 |
| vs. | |
| Dennis E. Hecker, Midwest Motors, LLC, LKMCD Properties, LLC, Chrysler Financial Services Americas LLC, Toyota Motor Credit Corporation, Inver Grove Motors LLC d/b/a Denny Hecker's Inver Grove Toyota, Jacob Holdings of Highway 110 LLC, and Jacob Holdings of Akrom Avenue LLC, | |
|      Defendants. | |

___

**UNSWORN DECLARATION FOR PROOF OF SERVICE**

___

John R. Neve, Neve Law, PLLC, attorney licensed to practice law in this court, with office address of 8500 Normandale Lake Blvd, Suite 1080, Minneapolis, MN 55437, declares that on the date set forth below, he caused the following documents:

**Defendant and Debtor Dennis Hecker's Memorandum of Law in Opposition to Motion for Summary Judgment and to Enforcement of Settlement Agreement; Second Declaration of John R. Neve; and Proposed Order**

to be filed electronically with the Clerk of Court through ECF, and that ECF will send an e-notice of the electronic filing to the following:

- Matthew R. Burton      mburton@losgs.com, swood@losgs.com
- Stephen F Grinnell      stephen.grinnell@gpmlaw.com
- Andrew Paul Moratzka      apm@mcmlaw.com, jef@mcmlaw.com, ldj@mcmlaw.com
- Timothy J Peters      tpeters@peterslawplc.com, peters.timothy.james@gmail.com
- Will R. Tansey      wrtansey@ravichmeyer.com

I further certify that I caused a copy of the foregoing documents and the notice of electronic filing to be mailed by first class mail, postage paid, to the following non-ECF participants:

| | |
|---|---|
| Toyota Financial Savings Bank<br>912 Ft. Duquesne Blvd, Ste T<br>Pittsburgh, PA 15222 | Inver Grove Motors, LLC<br>D/B/A Denny Hecker's Inver Grove Toyota<br>500 Ford Road<br>Minneapolis, MN 55426 |
| Jacob Holdings Of Akron Ave LLC<br>500 Ford Road<br>Minneapolis, MN 55426 | Jacob Holdings Of Hwy 110 LLC<br>500 Ford Road<br>Minneapolis, MN 55426 |
| Midwest Motors, LLC<br>2873 Highway 61 North<br>Maplewood, MN 55109 | Randall L. Seaver – Trustee<br>12400 Portland Ave S, Ste 132<br>Burnsville, MN 55337 |

And I declare, under penalty of perjury, that the foregoing is true and correct.

Dated: July 9, 2010                              Signed:   /e/ John R. Neve

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Bky No. 09-50779 |
| Dennis E. Hecker, | Chapter 7 |
| Debtor. | |

| | |
|---|---|
| Randall L. Seaver, Trustee | |
| Plaintiff, | **ORDER** |
| vs. | Adv. No. 09-5045 |
| Dennis E. Hecker, et al., | |
| Defendants. | |

This adversary proceeding came before the Court on July 14, 2010, on the motion of Randall L. Seaver, Midwest Motors, LLC, LKMCD Properties, LLC, Chrysler Financial Service Americas, LLC, Toyota Motor Credit Corporation and Toyota Financial Savings Bank for an order granting summary judgment and to enforce the settlement agreement. In his responsive pleadings, Defendant Dennis E. Hecker moved for summary judgment on the claims of the Trustee and the adverse creditors that the PSA was disguised purchase price.

Based on the motions and the file and the court being fully advised,

**IT IS ORDERED**:

1. The Plaintiff and Certain Defendants' Motion for Summary Judgment and to Enforce the Settlement Agreement is DENIED.

2. Defendant Hecker's Motion for Summary Judgment is GRANTED.

**BY THE COURT:**

Dated: _____   _____
Robert J. Kressel
U.S. Bankruptcy Judge